3 19 0 5 5 7 Paul Griffin Apple Lee versus the Village of New Lenox Police Pension Fund the Board of Trustees of the Village of New Lenox Police Pension Fund and the Village of New Lenox Appellants. Mr. Carlson you're all connected audio and visually correct? Yes I am. Okay and I'm just checking this uh Mr. Duda the same question? I as far as I know I am. Okay I think we can all hear you. So Mr. Carlson if you would please proceed. Good morning justices. Good morning Mr. Duda and may it please the court. This is a disability case pending that was decided by the New Lenox Police Pension Board. My name is Keith Carlson. I serve as counsel for the Pension Board. The burden of proof under any standard of review still lies with the plaintiff. They must prove that the Pension Board's decision was either illegal or somehow contrary to the manifest weight of the evidence or was clearly erroneous. The Pension Board has asserted in its briefs and here that this is a mixed question of fact and law. We cite the case of Frisbee versus Bolingbrook firefighter pension or the Village of Bolingbrook for that proposition. There are a few things that Mr. Duda states that we are not in any sort of disagreement. Largely there were findings made by the Pension Board factually that are still being disputed in all of the briefs before this court. Specifically the Pension Board found plaintiff was not engaged in any activity or duty different from any other citizen compelled to attend court. In addition the Pension Board found plaintiff was merely walking back to his car at the time, that he was not distracted, that he was not encumbered by any sort of special equipment or any other duties that distracted him from walking back to his car. Those factual findings are key to this court's disposition of this matter and they still seem to be being contested by the plaintiff in this case. As those facts are still at issue, as this matter is clearly a mixed question of fact and law therefore the clearly erroneous standard should apply. In addition under the Bolingbrook Frisbee case formerly contested facts that were resolved by the board do not somehow then convert the matter into a de novo review. As such again clearly erroneous we believe is the standard. At the beginning of the court's analysis it's also important to note that by statute as well as in this case it is not the case that the judge has decided that this matter should be rejected. Instead of going through the traditional analysis that's been adopted by virtually every court since the Johnson case was decided by the Illinois Supreme Court, plaintiff has now asked this court to now extend basically any on-duty activity to become a line someone is engaged in a mandatory activity while at work as a police officer does not convert it automatically into a line of duty disability pension. It's important to remember that there's a meaningful distinction between police disability cases and fire disability cases. Police disability cases are decided using the special risk analysis and contrary to what counsel for the plaintiff has argued the special risk provision was not excised out of the statute by Johnson in the Supreme Court's analysis. Instead Johnson told the courts that you have to focus on the nature of the activity being engaged in by the police officer not just the specific factual physical activity that they were engaged in at the time of injury. What the statute requires because it's important to remember article 3 does not have a definition of act of duty instead we borrow that from article 5 the Chicago police pension code where it states any act of police duty inherently involving special risk not ordinarily assumed by a citizen in the ordinary walks of life and it continues from there but that portion of the in this case today plaintiff slipping off a curb while walking back from court is not an act of duty. There are numerous cases decided by appellate courts across Illinois that have held simply that basic truism. The fact is that being on duty is not sufficient to constitute an act of duty. This is a term of art that has been interpreted by numerous cases. We have Fedorsky, Filskov, White, Summers, Morgan and this court's analysis in Buckner. In fact Justice O'Brien when she wrote this decision if Buckner versus University Park Police Pension Board adopted and referenced favorably. As a reminder Fedorsky versus Aurora Police Pension Board decided by the second district involved the crime scene technician who was in the process of preserving evidence preserving the chain of custody taking evidence gathered from a crime scene back to the police department. They were then involved in a car accident and that was held by the second district to not be an act of duty. Similarly adopting that reasoning they found that an officer who was required to be at work was traveling to or from work. Buckner the case that was decided by this court involving the term active duty found that that was not an act of duty. Coincidentally Mr. Duda also argued that case. This court should decline to extend beyond the realm of the statute in this case like it did in Buckner. Going along the same way Filskov versus North Lake Police Pension Board similarly declined such an expansive view. In that case you had an officer who was getting ready to actually go out on patrol and while getting into the car his partner unfortunately had pulled the car forward and ran over his foot crushing it and yielding a disability. In that case again an officer was going to get into a vehicle like the officer here who then was going to go on patrol unlike the officer here. The officer here was not going out on patrol. Even under those circumstances the first district found that they did not meet their burden of showing an act of duty. Could you Mr. Carlson address a more recent perhaps I think it's more recent case out of the Martin versus Shiloh? Yes. I think that Martin has to be distinguished on a variety of grounds. One it ignores all the cases I just listed. Two it's an outlier. That's the reality. I think that that Martin versus Shiloh should not be adopted by this court. I think that would lead to further breaking of the courts amongst the courts. It would create a conflict amongst the to overrule Justice O'Brien's prior analysis in Buckner where you favorably adopted Fedorsky. Adopting Martin requires this court to reject its holding in Buckner but it also requires to ignore all of those other cases that have been decided in every other district. Frankly I think with all due respect to the fifth district they got it wrong and it's that simple. Would it be a fair conclusion to say that the Martin case erased the special risk requirement? I think that the Martin case does exactly that. I think that it tries to treat fire and police exactly the same which would read into oblivion the statutory distinction that has been adopted in every other appellate case since the Johnson case was decided by the Supreme Court. I want to point out that includes cases where plaintiffs or applying applicant officers won. That includes all the other cases cited by the plaintiff in this case. That includes Jones versus Bloomington that stated look the difference here is not that police officers are just driving around in a car when they get into a car accident. They're on patrol and the court and the plaintiffs in those cases put in evidence to show that being on patrol has a factual distinction from driving around in your car like we do. What is the distinction? They're required to monitor radio traffic. They're required to monitor a computer. They're inherently driving distracted and they found that those distinctions were important and that's all based on findings. Rose versus Mount Prospect had the same findings. You look at the actual activity or the duty they were executing at the time of injury and if you look at that in all of the cases other than Martin, you have Jones, Rose, Wagner. Wagner is an excellent example of the distinction drawn. In Wagner you had somebody doing the inherently dangerous activity of serving papers on a similarly with patrol and when you look at those cases you say look that's something that a police officer engages in that's riskier than what normal citizens do. Here though every day prior to COVID there are thousands of people who go to court every day that are either required by work rule or they are required by subpoena or summons or court order. It's not a special risk of the gentleman who fell through the porch but a special risk of serving papers because we serve papers to people who don't maintain their porches. No, I think the special risk is that you are serving something on someone and that there has been a factual analysis done to be able to that commonly people when they're served are unhappy and they may react negatively or violent. But the injury was he fell through the porch it wasn't that he was shot at. I agree but the fact is the distinction drawn by Johnson and every case except Martin since then is that there's a special risk associated with the activity not the actual I could be going to serve a search warrant which everyone agrees is terribly dangerous but just because I'm walking across the street and slip on ice while serving the search warrant that's something all of us do is cross the street but drawing the distinction and looking at the duty they were exercising at that time. Well but isn't it something that you do every day when you you go on a porch? I don't disagree the distinction there with Wagner though is that he was serving papers. So if he was serving papers and he slipped on the ice should be the same result. If they were serving papers right if they were serving correct because there's an inherent dangerous activity in Wagner that was found and while I agree Wagner is as close as it really should get right but in this case again officer Griffin went to court to testify before a grand which is required and he did that he executed that requirement. It wasn't required just by court or by work rule he was required by court order but there are a lot of people other than police officers who are required to go to court because of a work rule because of a subpoena because of a summons because they're a party to a case because they're going through a divorce because they have to pay their taxes because they have the vote. Any of those things could be seen as a compulsory or at least exercising a fundamental right. So when you look at all of those in context you see that there is a massive distinction between all of the cases sans Martin and the case at bar. Mr. Griffin was engaged. I'm sorry what? It seems that Martin is is the last in the line of these not to take take the case or challenge the decision. Are we you know is that should that indicate to us that this you know that the law is changing and evolving in this area? I mean you know if Wagner was decided in 2013 I think that's the next case you know the next newest case and Martin is 2017. So is that an indication that you know things are changing and that's the special risk requirement is is no longer valid? No I think it means that you have one district that one panel of one district made a decision and the Supreme Court chose not to make it one of the what is it five percent or less of cases it chooses to take on its very busy docket. I'm not aware of any jurisprudence. Fewer cases Mr. Carlson fewer fewer cases. I'm sorry what? Five percent or fewer cases. I would say much fewer but I did not want to be. Well not less fewer. I'm sorry thank you. What I would say yes fewer five percent or fewer cases. I think what indicates more than anything if I may conclude my answer. Oh go right ahead. We're just having no I appreciate this morning. Okay I appreciate it though. I'll I'll note it so I don't make similar grammatical errors going forward. The I think that what it indicates is that you have an outlier panel of one court that has chosen to misread the statute. The fact is that the statute has not changed nor have all of the other districts including this one until today changed the analysis that Fedorsky, Filscoff, White, Summers, Morgan, Buckner in this case as well as the others of Jones, Rose, Alm all indicate you still have the special risk requirement which is alive and well and just because Martin versus Shiloh chose to try to excise that does not mean that this court should as the lemmings fall off the cliff analytically as well. I'll reserve the rest of my time for rebuttal please. Okay you'll have time and reply Mr. Carlson. Thank you. Thank you. Mr. Duda you may respond. Oops you're you're uh Mr. Duda you're uh yes there we go. May it please the court for the record my name is Thomas Duda. I represent the plaintiff appellee detective Griffin uh and um may it please the court and Mr. Carlson uh as a preliminary matter I I I just want to caution the court because the the pension fund in articulating the standard of review as far as I'm concerned we're fighting over de novo and clearly erroneous but if you look at pages nine and ten of their brief and you listen to argument he throws in that the facts in this case have to be judged under manifest weight of the evidence. There is no way that the manifest weight of the evidence standard applies to any facet of this case whatsoever. The reason this is a de novo case is that the the facts are that the detective went to the annex of the Joliet courthouse gave his testimony the place where where he was getting in getting into his vehicle and where he fell those are undisputed facts and the case that counsel relies on so heavily Fedorsky adopted a a de novo standard of review itself so to to give so much emphasis to Fedorsky and then to turn around and say that the standard review review is clearly erroneous I I don't think you can have it both ways but I think the important thing in listening to counsel's argument I just want to I'll start out by saying I do not perceive that Martin attempted to remove the special risk doctrine from analysis of police pension cases. I don't believe so but what I think counsel is trying to do in in his oral argument is to reintroduce the concept that in order for a special risk of a policeman to exist there has to be inherent danger in in carrying out that particular police duty so counsel went talking about serving papers on a recalcitrant and potentially lethal individual. He talked about how little risk there is to going to the the Joliet annex course he's never been to the Joliet so I'm sure that's not such a risky business but be that as it may the Supreme Court in Johnson and that's the first case I mean it's not the last case it's the first case adopted the language that that it's not the inherent risk that that decides the case and the important thing is is that Johnson said this and Jones said this and I suspect virtually all of the other litany of cases that were cited the standard is and this comes from the court noted the officer need not be injured by the active duty but rather that the injury occur in the performance of an active duty and all of the pension boards focus in their decision in their briefs and in their argument are the specifics of the physical uh conduct uh of the plaintiff when the injury occurred and that's not that's not the analysis the analysis is what was he performing what was the capacity in which he was at the Joliet annex and the capacity was to testify in accordance with his job as a detective and counsel has belittled the gravity of of being a detective and responding to a subpoena he was responding to a subpoena and he was testifying before a grand jury involving criminal matters uh I believe that that is that is clearly inherent police work I disagree with counsel I've been a lawyer for 44 years I know lawyers I have never been I don't know anyone who's ever been a witness in a grand jury I've never testified in a civil matter I believe that testifying on behalf of the state's attorney when you are a detective in a municipality in in uh in Will County is a is a a special risk of police work he was in performance of that and when he was injured the specifics of how he was injured may seem mundane but the reality is that it occurred at a point in time that uh he was performing an act of duty. Mr. Duda does it matter uh would your argument fluctuate if I focus you on the fact that he was leaving the courthouse rather than arriving I believe his testimony if it occurred was over um does that affect your analysis at all no it's actually it's in my brief your honor because I believe this is Johnson I think I think the case I have is essentially the Johnson case all right officer Johnson was a was a Chicago police officer who was directing traffic that was his his assigned duty he was called by a pedestrian uh they had had some sort of an accident and he crossed Michigan Avenue to respond to the civilian and having nothing to do with what the civilian did he slipped on some some oil that was Michigan Avenue I believe Johnson would have been decided exactly the same if when he finished responding to the civilian he returned to his post and slipped on Michigan Avenue leaving the scene and returning to his post so but but a variation of the Johnson tax would be that he was crossing the road not to respond to a civilian but to get in his car to go home after finishing his traffic control so I appreciate your argument I just wanted to test your analysis so thank you and and since since I perceive that that there's a challenge to the veracity of the Martin decision I would point out that in the Martin versus Shiloh decision not only had the detective completed his task at the courthouse already loaded up with with subpoenas he was in an automobile he was in his automobile and stopped at the stoplight when the accident occurred and it your honor you have to understand Detective Griffin was not directly patrolling and he was not responding to a call but we put into evidence and we we quoted extensively in our brief he is required to be alert to criminal activity he carried a radio on the shift and he was frequently called to respond to criminal activity and he had to be alert to that criminal activity during his entire shift so I don't let me let me ask you this Mr. Duda when is an officer not in an active duty Morgan when when he's when he's sitting at a desk writing a report why why why is that different he's on the clock because I don't I don't I don't think that the issue is whether he's on the clock I mean the issue is this is that was where I was going and it sounded to me like a lot of this argument is once you're on the clock you're in an active duty because you're performing police work and isn't it police work to sit at a desk and fill out a report and I don't know I don't think the nature of that is is is a special risk of police work I mean okay so you're not you're not you're you're so you are not erasing the special risk requirement absolutely not okay well it sounds like it's in some of these instances that well I if I gave that impression I did not mean to give that impression okay was Mr. Griffin finished he was not finished with his day upon his completion of his testimony no it was midday as far as I as far as I recall he clearly was not finishing his shift he was returning to do other detective assignments at the station council relies heavily on on the on the white decision oh I did want to address uh since he but that's not one of them but I think the distinction with with Buckner is that officer Buckner was not at work when the injury occurred she she part of her assignment was to be available to respond 24 hours a day but when her accident occurred she was on her way home she was in her automobile driving home and her shift was over so that that I think is distinguishable I think I I think Filscoff is distinguishable uh on the basis that the officers had not in fact begun their shift they that's happened just before they were going on shift and the distinguished for Fedorsky is that uh it was the the the pension board uh analysis was that being an evidence technician even though they had the police uh job a job title was civilian work it wasn't police work uh I also think that they're both wrongly decided uh and I think when you read the the language uh in Jones and a couple of the other cases we cited uh the Jones court clearly said that in its opinion uh white is no longer good law uh white is part of this there's a there's a whole series of cases in the second district which were two to one decisions almost two to one decision white was a two to one decision uh so in my opinion uh white is no law I I if you actually go on uh the lexus nexus they reflect that it's overruled that it's been overruled uh so I think the the combination of Johnson Martin Jones and Rose uh support that the decision of the pension board is in conflict with the statute I think it that it's clearly erroneous because in in Jones and Rose neither officer uh was engaged in in any form of investigation in fact uh Officer Rose that was one of the cases I won uh Officer Rose had been involved in an investigation looking for a juvenile who would run away from home and he had closed his file on the computer and uh he was at a gas station and the gas station owner had directed where the teenager had gone and and the officer had closed his file and was simply driving on Northwest Highway in Mount Prospect when the accident occurred and that's why he lost and the court said no the job of a patrol officer is to patrol and in my opinion the job of the detective in part is is to cooperate with the state's attorney's office uh respond to state's attorney subpoenas and and testify my client was injured in the performance of that duty even though the testimony had been given in my opinion your honor it that transaction had not closed at the time that the injury occurred uh I appreciate the court's attention I I think that uh the decision uh is the circuit court judge and you're not reviewing the circuit court decision but under either clearly erroneous or de novo standard uh the the deprivation of a line of duty disability to detective Griffin was in error okay uh I don't any questions from the bench no okay thank you Mr. Duda thank you uh Mr. Carlson you may reply thank you um I'm going to start with the factual clarification Mr. Duda had pointed out that he was listening to a radio or something of that nature I urge the court to look at uh page 959 of the record where the plaintiff admitted under oath that he was not driving on a beat he was not looking out for any particular crime uh that he had not been contacted by the department telephone or radio uh and uh more important on page 960 he admits that he had completed all of his duties before the grand jury he then returned to work finished the rest of his work day um and I just think that's important to note counsel is it also undisputed though that he was uh driving a department vehicle he was driving an unmarked department vehicle that is correct not uh I believe he was a passenger I and I don't believe he was driving I believe he would have been a passenger in the vehicle um but it's important to note as Mr. Duda said it's the capacity in which they were acting at the time of the injury and the capacity he was acting in here is a person who had finished testifying at court and was going back to their car to commute back to their place of work that is not unlike uh every witness or civilian plaintiff or defendant or criminal defendant or traffic defendant judge clerk court security officer lawyer or anyone else now Mr. Duda accused me of belittling police detectives and and that's absolutely untrue I have nothing but respect for the police I've uh as well as firefighters I've dedicated my professional career to representing them but at the same time I think it's important to note stating things that are untrue doesn't make them true despite how many times you repeat it the fact is that a police officer is at no greater risk than any civilian who is compelled to go to court that's a reality and that hasn't been refuted factually legally or otherwise and that is the distinction here and the only way you can overcome the special risk analysis that is used by the pension board in this case is to do exactly what Justice Holdridge discussed with counsel for the was engaged in an activity that is the same as every civilian who is required to go to court it's the same there's no way that he demonstrates in any way the police officers engaged in activity are held to some higher risk and certainly because of that the the the pension board seems to have gotten it right here that what I think is being urged by the plaintiff and certainly seems to have come through not only as brief but oral argument today is that so long as they're following some sort of work rule they're automatically entitled to a line of duty disability and that's not true that was elucidated by Justice Holdridge's questioning when he said well then when isn't it well when they're filling out paperwork but they're required to fill out paperwork so obviously mandatory is not enough they're required to be at work on time obviously speeding to be able to be at work on time doesn't make it an active duty and then you have all of the cases decided since Johnson all of those cases now Mr. Duda took time trying to explain those officers were on the clock when they ran over the when the officer's foot was run over they were in the process of going out on patrol they were going to get in the car and start driving before that they showed up they did roll call they did all of that they weren't off the starting at somebody's house they were at the police station they're in uniform they're getting into a marked police car with the radio that they were required to monitor and go out and that was much closer to the cases of Jones or Rose where you have the actual risk of somebody going out on patrol in the end Mr. Carlson just as an aside very much of we're always talking marked or unmarked police cars what difference does that make? I think that drawing the distinction between marked or unmarked draws a distinction as to the additional things that police officers are expected to do when they're in a marked police car that they are more likely to be summoned for help that in this day and age of less than positive police atmosphere they may be deemed a target I want to take that argument off the table I want to make clear that's not what we're dealing with that's all okay okay I think in sum when we look at this case we have to remember America prides itself on having open courts citizens are ordinarily routinely and constitutionally mandatorily woven into our court system police officers are not any different and they are not at any different risk than a citizen who is compelled to attend court as such there was no special risk here meaning he was not engaged in active duty and we ask the appellate court to affirm the pension board's decision in this matter okay thank you Mr. Carlson thank you Mr. Duda and thank you Mr. Carlson both for your arguments in this matter this morning it will be taken under advisement and a written disposition shall issue I think shortly you'll be leaving the courtroom the virtual courtroom so again thank you for participating in a remote hearing